**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MARY FLYNN, | ) CASE NO. 1:22-CV-01886-CEH |
| | ) |
| Plaintiff, | ) CARMEN E. HENDERSON |
| | ) UNITED STATES MAGISTRATE JUDGE |
| v. | ) |
| | ) MEMORANDUM OF OPINION & |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ORDER |
| | ) |
| Defendant, | ) |

Comp

**I. Introduction**

Plaintiff, Mary Flynn ("Flynn" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for a period of disability and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 21). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

**II. Procedural History**

On July 28, 2020, Claimant filed applications for a period of disability and DIB, alleging a disability onset date of November 25, 2017, and claiming she was disabled due to Parkinson's disease. The applications were denied initially and upon reconsideration, and Flynn requested a hearing before an administrative law judge ("ALJ"). On September 16, 2021, an ALJ held a hearing, during which Flynn, represented by counsel, and an impartial vocational expert testified. (ECF No. 5, PageID #: 53, Tr. at 32). On October 4, 2021, the ALJ issued a written decision

1

finding Claimant was not disabled. (*Id.*, PageID #: 34, Tr. at 13). The ALJ's decision became final on September 29, 2022, when the Appeals Council declined further review. (*Id.*, PageID #: 22, Tr. at 1).

On October 20, 2022, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8 and 11). Claimant asserts the following assignments of error:

> (1) The administrative law judge erred in assessing Plaintiff's manipulative limitations, finding that Plaintiff could frequently and bilaterally handle and finger, without support of substantial evidence in the record.
>
> (2) The ALJ failed to properly evaluate Plaintiff's fatigue in the RFC determination.

(ECF No. 8 at 1).

**III. Background**

    **A. Relevant Hearing Testimony**

The ALJ summarized the relevant testimony from Claimant's hearing:

> Since 2017, the claimant testified that her condition had worsened. The claimant testified that a brain stimulator helped her pain level with sitting, standing, and walking, and she no longer has pain when performing these activities. The claimant testified that she continued to have problems with gait. The claimant testified that if she sits too long, her feet become stiff, and she becomes a fall risk. The claimant testified that she previously had her unit reconfigured every two months. Since using the stimulator, the claimant testified that she took less medications. The claimant testified that she could "hunt and pick" type for about five or ten minutes. Following this, the claimant testified her hands "cramp up." The claimant testified that the stimulator had not helped in this regard. The claimant testified that she sometimes drops things. The claimant endorsed memory problems. The claimant endorsed problems with balance such as she will "shuffle" when she walks. The testified that she had fallen, and her husband will hold her hand so she does not fall. The claimant testified that she has problems with fatigue. If doing a chore, the claimant testified that she has rest. The claimant testified that she

> takes a two-hour nap. The claimant testified that she could lift but has problem carrying due to problems falling. The claimant estimated that she could stand ten or 15 minutes but weirdly stands.
>
> Regarding activities of daily living, the claimant testified that she makes the bed and cleans the bathrooms. The claimant testified that she washes laundry but does not carry it up and down the stairs. The claimant testified that she makes dinner twice a week. The claimant testified that she drives but only once a week for 30 minutes. The claimant testified that she keeps in touch with outside relatives and two friends. The claimant testified that she goes to car shows with her husband and shops with her husband on occasion. The claimant testified that she has a computer, but she only uses once or twice a week. The claimant estimated that she did 25 percent of the household chores.

(ECF No. 5, PageID #: 42, Tr. at 21).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> An MRI of the brain dated October 30, 2018, showed no acute intracranial findings (Exhibit B2F, page 12). A Cat scan of the brain dated January 28, 2019, also did not show any acute intracranial process. An x-ray of the skull dated January 28, 2019, showed satisfactory placement of a brain stimulator (Exhibit B2F, page 28).
>
> The claimant returned to treatment after six months on March 21, 2018 (Exhibit B2F, page 50). The claimant exhibited quite a bit of dyskinetic head movement and had leg movements; however, after talking about it, the movements became less obvious. The claimant asked for physical therapy which had previously helped. The claimant was described as having "mild" bradykinesia and some facial hypokinesia. The claimant could rise from her chair easily, initiate gait, and walk briskly. The claimant had a reasonable arm swing. The claimant was described as overall doing well. Treatment notes from June 6, 2018, again showed the claimant had bradykinesia and left shoulder problems (Exhibit BF2, page 51). The claimant was described as managing activities of daily living but taking longer. The claimant denied falling down, denied memory problems, and indicated that she did not have problems managing financial paperwork. Shoulder pain was described as no longer a problem following physical therapy. The claimant reported that she becomes fatigued and takes daytime naps. The claimant indicated that she drives. Examination described the claimant as

3

well appearing and comfortable. A neurological examination remained unremarkable. The claimant was interested in a deep brain stimulator.

The claimant reported on September 6, 2018, that she felt better with Elavil which improved her sleep (Exhibit B2F, page 44). The claimant reported onset of dyskinesia about one hour after taking Sinemet, but it subsided before the next dosage. The claimant estimated that around 40 percent of daytime hours were taken up by dyskinesia. Treatment notes from October 29, 2018, showed the claimant had no medication dyskinesia of the arms, legs, and trunk. The claimant's goal with the deep brain stimulator was to decrease stiffness and dyskinesias. The claimant indicated that working at a keyboard made her job difficult. A neurological examination remained generally unremarkable including steady gait. The claimant had rapid alternating movements slowed in amplitude and frequency. Physical therapy notes from November 6, 2018, indicated that the claimant had non-antalgic gait, and the six determinants of gait were preserved (Exhibit B2F, page 65).

The claimant presented on October 21, 2019, for a deep brain stimulator implant adjustment (Exhibit B4F, page 11). The claimant reported that since her last visit, she had fallen from a bike without injury and now rode a stationary bike. The claimant was described as continuing to do well with improved gait. The claimant's medications were adjusted to address fatigue. The claimant indicated that she felt pretty good in the morning.

The claimant underwent implantation of a deep brain stimulator on January 27, 2019, and was discharged the next day (Exhibit B2F, page 84). At a follow-up visit on February 10, 2019, the claimant was described as still able to ambulate without any device (Exhibit B4F, page 38).

Notes from September 6, 2019, showed that with a deep brain stimulator adjustment showed improvements in gait (Exhibit B4F, page 13). Treatment notes from November 26, 2019, indicated that the claimant showed improved gait with programming changes (Exhibit B4F, page 9). The claimant had no observed dyskinesias.

The claimant started care with a new provider on December 16, 2019 (Exhibit B1F, page 3). Notes indicated that the claimant's movement had become much better with her brain stimulator implant. The claimant indicated that she was freezing often, but this improved following the procedure. The claimant was noted as taking medication to aid with sleep. A neurological examination was

>unremarkable including normal motor strength.
>
>The claimant reported on January 15, 2020, good motor benefit from the surgery with improved gait (Exhibit B4F, page 6). The claimant reported reduced freezing and rigidity, and medications were reduced. The claimant was discontinued on amantadine. Other treatment notes from this date indicated that the claimant had no dyskinesia (Exhibit B4F, page 9).
>
>The claimant presented for a deep brain stimulator adjustment on October 2, 2020 (Exhibit B8F). The claimant was described as having improvement in smoothness of gait (Exhibit B5F, page 12). Treatment notes from October 9, 2020, showed on monopolar review improved bradykinesias and improved gait (Exhibit B8F, page 9). The claimant underwent a programming adjustment and was referred to physical therapy.
>
>The claimant presented for a deep brain stimulator check on March 12, 2021 (Exhibit B13F, page 11). An examination showed that the claimant was alert and oriented. The claimant had minimal bradykinesias. The claimant was described as having good symptom control with medications, and the deep brain stimulator continuing to assist with gait.

(ECF No. 5, PageID #: 43-44, Tr. at 22-23)

    C. **Opinion Evidence at Issue**

Several medical professionals opined on Flynn's impairments and limitations.

On January 15, 2020, Dr. Darlene Floden completed a neuropsychological evaluation report for Flynn. (*Id.*, PageID #: 482, Ex. B2F). Dr. Floden noted that her evaluation "revealed performance declines suggestive of worsening frontal-subcortical disruption. While this may, to some extent, represent influence of disease progression, treatment changes, and surgical intervention, Ms. Flynn also exhibited significant fatigue over the course of the evaluation and this likely played a role on these more demanding tasks." (*Id.*, PageID #: 483, Tr. at 462).

On November 7, 2020, Flynn underwent a consultative examination with Dr. Craig Hermann. (*Id.*, PageID #: 1061, Ex. B6F). Dr. Hermann noted significant generalized bradykinesia

5

"with some upper exptremity rigidity with rapid flexion and extension at the elbow." (*Id.*, PageID 1065, Tr. at 1044). Dr. Hermann opined that Flynn

> has no limitations with sitting. The claimant has mild limitations with standing and moderate limitations with walking due to Parkinson's. The claimant does not need an assistive device with regard to short and long distances and uneven terrain. The claimant has mild limitations with lifting and moderate limitations with carrying weight due to Parkinson's. There are limitations with bending and stooping and the claimant will be able to perform these frequently due to Parkinson's. There are limitations with crouching and squatting and the claimant will be able to perform these occasionally due to Parkinson's. There are no limitations on reaching, grasping, handling, fingering and feeling. There are no relevant visual, communicative or workplace environmental limitations.

(*Id.*, PageID #: 1065, Tr. at 1044).

On November 22, 2020, state agency medical consultant Dr. Leon Hughes reviewed Flynn's case file and provided his opinion as to her impairments and limitations. (*Id.*, PageID #: 109, Ex. B3A). Dr. Hughes opined that Flynn could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently. (*Id.*, PageID #: 109, Tr. at 88). Dr. Hughes opined that Flynn could stand and/or walk for up to four hours and sit for a total of six hours in an eight-hour workday. (*Id.*). Dr. Hughes stated that Flynn could frequently climb ramps/stairs, balance and stoop, occasionally kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. (*Id.*). Finally, Dr. Hughes opined that Flynn should avoid all exposure to hazards such as machinery and unprotected heights. (*Id.*).

On March 1, 2021, state agency medical consultant Dr. Lynne Torello reviewed Flynn's medical records on reconsideration. (*Id.*, PageID #: 113, Ex. B5A). Dr. Torello opined that Flynn could occasionally lift and/or carry up to ten pounds, stand and/or walk for four hours and sit for up to six hours in an eight-hour workday, occasionally climb ramps or stairs, balance, stoop, kneel,

6

crouch, and crawl, and never climb ladders, ropes or scaffolds. (*Id*.). As for Flynn's manipulative limitations, Dr. Torello opined that Flynn could frequently handle or finger. (*Id*.). Finally, Dr. Torello opined that Flynn should avoid all exposure to hazards such as machinery and unprotected heights. (*Id*., PageID #: 118, Tr. at 97).

On April 16, 2021, Flynn underwent a physical residual functional capacity assessment with occupational therapist Michael Milicia at Cleveland Clinic Rehabilitation and Sports Therapy where she was referred by her physician's office. (*See id*., PageID #: 1136-43, Tr. at 1115-22). Milicia opined that Flynn "is able to perform sitting for up to 6 hours and 24 minutes total during a work day [and] standing for up to 3 hours and 16 minutes total during a work day and 26 minutes at one time before requiring a change of position." (*Id*.). Additionally, Milicia opined that Flynn demonstrated occasional tolerance for bending, fine coordination, gross coordination, pinching, simple grasping, squatting, stair climbing, and walking. (*Id*.). Milicia opined that Flynn should avoid a competitive work environment involving functional activities of dynamic balance, static balance, crawling, firm grasping, and repetitive kneeling. (*Id*.). The results of Flynn's functional assessment showed that she could perform bilateral lifting of ten pounds; horizontal pushing of fifteen pounds; horizontal pulling of fifteen pounds; and bilateral carrying of fifteen pounds. (*Id*., PageID #: 1137, Tr. at 1116). Milicia opined that Flynn could perform within the sedentary exertion level, but that she was further limited in that she could only sit for one hour at a time. (*Id*., PageID #: 1137-38, Tr. at 1116-17).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairment: Parkinson's disease (20 CFR 404.1520(c)).

7

>    5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can stand and walk four hours of an eight-hour workday; sit for six hours of an eight-hour workday; frequently lift and carry ten pounds; can occasionally push and pull; can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently handle and finger bilaterally; and must avoid all exposure to hazards such as dangerous machinery and unprotected heights.

(ECF No. 5, PageID #: 41, Tr. at 20).

>    6. The claimant is capable of performing past relevant work as a computer security coordinator and manager, data processing. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(*Id.*, PageID #: 46, Tr. at 25).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott*

8

v. *Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

**1. The ALJ's finding that Claimant can perform frequent bilateral handling and fingering is supported by substantial evidence.**

In her first issue, Claimant argues that the ALJ erred when they determined that Claimant

9

could perform frequent bilateral handling and fingering. Commissioner argues that Claimant is merely asking this Court to reweigh the evidence, which is not the purview of the Court on appeal.

The ALJ's finding that Flynn could perform frequent bilateral handling and fingering is supported by the opinion of state agency reviewing physician Dr. Torello. The ALJ found Dr. Torello's opinion persuasive and explained that it is consistent with the consultative examination and the evidence as a whole. (ECF No. 5, PageID #: 46, Tr. at 25). Specifically, the ALJ explained that "examination notes on March 12, 2021, showed minimal bradykinesias (Exhibit B13F, page 11). Monopolar review on October 9, 2020, showed improved bradykinesias and gait (Exhibit B8F, page 9). Treatment notes from January 15, 2020, showed no dyskinesia." (*Id*.).[1] An ALJ may reasonably rely on the opinions of state agency reviewing and consulting physicians. *See Blakely v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight to state agency physicians over [Plaintiff]'s treating sources was not, by itself, reversible error.").

Flynn cites to her subjective complaints and the opinions of Mr. Milicia and consultative examiner Dr. Hermann to support her argument for greater limitations to her fingering and handling. However, the ALJ found these opinions less persuasive than the opinion of Dr. Torello and explained their reasoning in the decision. The ALJ also found that, because Dr. Torello had a greater level of expertise as a medical doctor (rather than Mr. Milicia as an occupational therapist), and because she had the benefit of reviewing the entirety of the record up to the time of her review, Dr. Torello's findings were more persuasive than Mr. Milicia's opinion based on a one-time

---

[1] "Bradykinesia means slowness of movement and speed (or progressive hesitations/halts) as movements are continued." PARKINSON'S FOUNDATION, https://www.parkinson.org/understanding-parkinsons/movement-symptoms/bradykinesia (last visited October 17, 2023).

consultative examination. (ECF No. 5, PageID #: 46, Tr. at 25). Here, substantial evidence supports the ALJ's decision, and this Court must not disturb that finding absent significant evidence that the ALJ failed to consider the evidence of the record. *Id.* at 406.

Flynn's assertion that the ALJ "ignored" the evidence weighing in favor of greater limitations (ECF No. 8 at 12) is simply incorrect. The ALJ thoroughly discussed each of the opinions and adequately explained their persuasiveness. Additionally, the ALJ specifically noted Flynn's symptom testimony, including that her symptoms had worsened since 2017, that she can "hunt and pick" type for five to ten minutes, that her hands cramp up after typing and the stimulator had not helped in this regard, that she drops things, and that she can lift but has problems carrying due to falling. (ECF No. 5, PageID #: 42, Tr. at 21). The ALJ noted the findings of the residual function capacity examination in April 2021, which included a limitation to only occasional fine coordination, grasping, and pinching. (*Id.*, PageID #: 44, Tr. at 23). However, as explained above, the ALJ noted that examination notes from one month prior showed minimal bradykinesias. (*Id.*).

To the extent Flynn asks the Court to override the ALJ's weighing of the evidence, the Court declines to do so. Flynn highlights that there may be substantial evidence to support an alternative conclusion. However, this is not enough to disturb the ALJ's finding. As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion[.]'" *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)); s*ee Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted). Here, the ALJ discussed evidence that weighed both in favor of and against granting benefits. As substantial

11

evidence supports the ALJ's conclusion, this Court shall not disturb it.

### 2. The ALJ did not err in their consideration of Claimant's fatigue.

In her second issue, Flynn asserts that the ALJ also committed reversible error when they failed to properly assess her statements concerning the intensity, persistence, and limiting effects of her fatigue related to Parkinson's Disease. (ECF No. 8 at 13). Flynn maintains the ALJ failed to consider statements about her symptoms and evidence in the record that supported those statements. (ECF No. 8 at 13). The Commissioner argues that the ALJ considered all the evidence and properly assessed Flynn's symptom testimony. (ECF No. 11 at 15).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.* The ALJ need not analyze all seven factors but should show that they considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will

12

determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), *report and recommendation adopted by* 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ summarized Claimant's testimony about her fatigue: "The claimant testified that she has problems with fatigue. If doing a chore, the claimant testified that she has [to] rest. The claimant testified that she takes a two-hour nap." (ECF No. 5, PageID #: 42, Tr. at 21). Next, the ALJ provided a unified statement of reasons for discounting credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the evidence does not support greater limitations than those found above.

(*Id.*, PageID #: 42-43, Tr. at 21-22). The ALJ noted that Flynn took day-time naps to assist with her fatigue in 2018. (*Id.,* PageID #: 43, Tr. at 22 (citing (Ex. BF2, page 51)). The ALJ noted the 2019 medical record showing that Flynn's doctor adjusted her medication due to her day-time fatigue. (*Id.* (citing Ex. B4F, page 11)). The ALJ also recognized that Flynn took medications to aid with over-night sleep. (*Id.*, PageID #: 44, Tr. at 23 (citing Ex. B1F, page 5)). Accordingly, the ALJ's decision referenced record evidence of Flynn's recurring fatigue, her daily activities and how fatigue affects them, her fatigue as a side effect of the medication taken to alleviate symptoms of Parkinson's disease, medication taken to aid in night-time sleep, and other measures, such as naps, taken by Flynn to alleviate symptoms of fatigue. *See* SSR 16-3p. Although the ALJ did not reference every mention of fatigue or medication adjustment throughout the records, they were not required to do so. *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir. 2006) (citations omitted). Moreover, the ALJ specifically stated that they "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (ECF No. 5, PageID #: 41, Tr. at 20). Here, it is clear that the ALJ found incredible and exaggerated Flynn's testimony that she required daily naps due to her fatigue. Instead, the ALJ cited evidence that Flynn's fatigue was being monitored by her physicians who were adjusting her medications – both her night-time sleep aids and day-time medications such as Sinemet prescribed for treatment of Parkinson's Disease symptoms. In short, the ALJ properly considered the severity of Flynn's fatigue in their determination of her RFC.

Flynn argues that the ALJ erred by not addressing her hearing testimony that her fatigue is the "worst part of Parkinson's" and that it remains unchanged by the deep brain stimulator implant. (ECF No. 8 at 15 (citing Tr. at 55)). Flynn also asserts that the ALJ failed to address a

14

neuropsychological evaluation where Dr. Darlene Flodden found that Flynn's fatigue not only affected performance on the examination, but that she demonstrated neurocognitive decline as a result of her Parkinson's Disease. (ECF No. 8 at 15 (citing Tr. at 461-462). As discussed above, an ALJ is not required to address every reference to evidence in their decision to have *considered* that evidence. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)) ("[W]e do not require an ALJ to discuss every piece of evidence in the record to substantiate the ALJ's decision."); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to consider all of the evidence in the record, he is not required to discuss each item of evidence in her opinion." (citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016). Here, the ALJ specifically recognized Flynn's symptom of fatigue and the measures taken to alleviate it. Further, the ALJ specifically cited to Dr. Flodden's report in the decision. (ECF No. 5, PageID #: 40, Tr. at 19). Although the ALJ did not reference Dr. Flodden's observation of "significant fatigue" in the January 2020 report, the ALJ's reference to the report is a clear indication that they considered it.

Despite clearly considering Flynn's fatigue, the ALJ did not include a limitation in the RFC. Declining to adopt a limitation in the RFC does not preclude an ALJ from considering the related symptom. Rather, it simply means that—as was the case here—the ALJ considered the symptom but determined that it did not warrant any additional limitations. The ALJ reviewed the medical records and medical opinions that referenced Flynn's fatigue as well as her hearing testimony. The ALJ considered that Flynn suffered from fatigue as a result of her Parkinson's and as a side effect of her taking medication to assist in alleviating the symptoms of Parkinson's. No medical opinions, however, state that Flynn's fatigue limited her functional capacity in any way.

15

The state agency reviewing physicians reviewed Flynn's medical records, which contained a history of Flynn's complaints of fatigue and medication adjustments, yet neither opined that any limitation regarding fatigue was necessary. Nurse Milicia's opinion did not include a limitation regarding Flynn's fatigue; and Dr. Flodden's report, in which she observed Claimant has "significant fatigue", did not include an opinion as to limitations caused by this fatigue. Flynn points to no evidence from a medical source indicating that her fatigue resulted in functional limitations. (*See* ECF No. 8). Flynn does not even argue what limitation *should* have been included in the RFC to account for her fatigue, merely that she took naps daily or went to bed early. (*See* ECF No. 8). Flynn's "unsupported allegations are insufficient to show that the ALJ erred by omitting these limitations from her RFC." *Jones v. Comm'r of Soc. Sec.*, 2:20-cv-2316, 2021 WL 2643116, at *6 (S.D. Ohio June 28, 2021) (citations omitted); *see also Duncan v. Comm'r of Soc. Sec.*, No. 1:16-cv-1003, 2018 WL 1417327, at *3 (S.D. Ohio Mar. 22, 2018) ("Plaintiff has also failed to cite to medical evidence in the record which would support additional limitations in the RFC."). Therefore, substantial evidence supports the ALJ's decision not to include limitations in the RFC regarding Flynn's fatigue, as further discussed above. *See Segers v. Comm'r of Soc. Sec.*, No. 5:16-CV-2017, 2017 WL 9478425, at *10 (N.D. Ohio June 19, 2017), *report and recommendation adopted sub nom. Segers v. Berryhill*, No. 5:16-CV-2017, 2017 WL 4129117 (N.D. Ohio Sept. 19, 2017).

It is not the role of this Court "to reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). The ALJ's decision satisfies the Court that the ALJ considered all of the relevant evidence and that a reasonable mind might accept that

16

evidence as adequate to support the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying to Plaintiff disability insurance benefits. Plaintiff's Complaint is DISMISSED.

Dated: October 26, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE